YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. CITY OF VICKSBURG.

[49 South. 185.]

MUNICIPALITIES. *Taxation. Railroads. Assessments. Railroad commission. Constitution* 1890, *sec.* 112. *Code* 1906, § 4382–4393.

Provision, complete in all its details, is made by law for the assessment of railroad property by the railroad commission, and municipalities are not authorized to make independent assessments of such property, although they be operating under special charters granted before the adoption of the constitution of 1890. Constitution 1890, sec. 112; Code 1906, §§ 4382–4393.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

The city of Vicksburg, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The suit was for the recovery of municipal taxes alleged to be due the city by the railroad company on its property within the municipal limits for the years 1902 to 1907, both inclusive, as shown by independent municipal assessments for said years. The city of Vicksburg has never adopted the chapters, entitled "Municipalities" in the Codes of 1892 and 1906; but has for its charter special acts of the legislature enacted before the Constitution of 1890 became operative by the terms of which the city is empowered to assess property for municipal taxes.

The defendant's demurrer to the declaration was overruled in the court below; it declined to plead further and judgment final was rendered against it.

*Mayes & Longstreet,* for appellant.

The city claims on the basis of its own assessment, and the

railroad company demands to settle on the basis of the assessment of the railroad commission.

The claim of the city is based upon its special charter, being the act of 1884, page 422, *et seq.*, particularly sections 7, 30, and 32.

We do not question the proposition that if the city's charter stood unaffected by any subsequent legislation the city would have the power to make the assessment which it has made and the railroad company would have to pay accordingly.

We claim that so far as those provisions contained in the charter providing for the taxation of railroads on an assessment locally made by the city taxing officials are concerned, a repeal has been made by the provisions of the Constitution of 1890 and by the resultant provisions of the Codes of 1892 and 1906, respectively.

Section 112 of the Constitution is pertinent. It provides that taxation shall be uniform and equal throughout the state; that property shall be taxed in proportion to its value; that property shall be assessed for taxes under general laws, and by uniform rules according to its true value; but that the legislature may provide for a special mode of valuation and assessment for railroads, etc.

Then the Code of 1892 carries out that provision in respect to the taxation of railroads. Section 3875 provides for the filing before the railroad commission of schedules, and it is expressly required that those schedules shall show the mileage in each city, town, or village, and the value of the whole, and of each part thereof, etc.; the number of depot buildings and warehouses; in what county, city, town, or village located, etc.; and the value of the same including the lands and lots; the value of machine shops and car shops and stationary machinery and tools, and in what city, town or village, located, etc.

In short, this paragraph requires the localization before the railroad commission of all of these properties.

Of what use would it be to state to the railroad commis-

sion exactly what part of the railroad property lies in what city, town or village if the railroad commission were not intended to assess that property distinct from the general assessment made by it on the railroad as a whole, or even on the railroad as subdivided into such sections as shall lie within the limits of a county?

For instance: What sense is there in requiring that these assessment lists shall show whether the roundhouse and machine shops at Vicksburg lie within the corporate limits or lie without the corporate limits, supposing that they were within Warren county, unless the railroad commission was to assess for city taxation?

That is not all.   Section 3880 expressly requires that the state railroad assessors, being the railroad commission, shall on or before the first Monday of June, in each year, make out for each county an assessment roll of such property, both real and personal, on which roll it is expressly directed that the property in cities, towns and villages shall be distinguished; and that such roll shall be so made that each county, levee district, and municipality shall receive its just share of such taxes proportionately to the amount of the property therein situated.

Note the expression that each municipality shall receive its just share of such taxes; manifestly meaning its just share of the taxes assessed by the railroad commission.

If the railroad commission are not assessors of railroad property for city taxation, then why require them to trouble with the question whether a roundhouse or a machine shop, being within the limits of a certain county, lies inside or outside of a certain municipality?

It is manifest that this scheme contemplates that the railroad commission shall assess property of this nature for city taxation.

The subsequent sections require that such assessment roll made out shall be sent down to the counties and there placed on file.   The sections do not require that such assessment rolls shall be sent to the various municipalities; but the manifest intention

is that by sending them down to the chancery clerks of the counties they will practically be brought home to each municipality in such county. It was unnecessary to multiply copies and vastly increase the tax assessment literature, as would have been done by requirement that copies should be sent to each municipality.

Looking at the scheme as a whole, we submit that the railroad commission is, under this chapter (and the same provisions are brought forward into the Code of 1906) constituted assessor of railroad property, even for cities, and municipalities.

The fact that the railroad commission has made this assessment is a practical interpretation of these statutes by that administrative body, which we take it is quite as persuasive as the other practical construction which is invoked in the plaintiff's declaration of the fact that it has made assessments also.

There is every reason why the administration of the taxing system for which we contend should be established.

It is true that in one sense the taxation of property within the limits of the municipality is a local matter; but it is not always true. It is not true in respect to a railroad. No railroad lies within the limits of a municipality. The little part of its track and the few roundhouses connected therewith which do lie within the limits of a town, are utterly valueless disconnected from the residue of the property. A railroad, in order to be of any value, must be considered as a working unit. It may pass through a municipality but it does not lie entirely within the municipality, and no valuable portion thereof, disconnected from the entire system, does lie within the limits of any municipality.

In this connection the court will note that under our taxing system it is expressly required by the revenue law that as an element of the valuation of the railroad, shall be figured in its franchise.

Now, what part of a franchise lies within Vicksburg? Is it to be tolerated that the city of Vicksburg shall figure so much

of its franchise as attributable to Vicksburg, and the city of Greenville shall do the same, and every other city and municipality along the line of railroad shall do the same, and each shall have its own notion as to what part of the valuation of the franchise as a whole, it is entitled to appropriate and make the basis for an assessment?

On the other hand, the railroad commission can administer this important element in valuation justly and uniformly and apportion in valuation of the railroad property which does lie within any town, such proportion of the total valuation of the franchise as may be justly attributable thereto.

And so in other particulars not necessary to be enlarged upon. The court will get the idea.

In conclusion, we have to say that it is manifest that as the city of Vicksburg is a mere municipality, it can have no vested interest in the provisions of its charter on the subject of taxation which will exclude the power of the state to modify its charter at will. We submit that it has been modified, and that the proper basis on which the railroad company should pay its taxes in the one contended for by it, to wit: the assessment made by the railroad commission.

*George Anderson,* for appellee.

It will be observed that the city of Vicksburg is not under the Code chapter on municipalities, but is operating under its private charter granted to it by the legislature in 1884. Section 7 of this charter names the corporate officers of the city, among whom is the "assessor and collector of taxes" . . . who "shall be elected by the qualified voters of the city." Section 30 of the charter provides "That all assessments of the values of real and personal property subject to taxation in the city shall be made by the city assessor and collector," etc. Section 32 of the charter provides, "That all property of railroads situated in said city may be assessed and taxed as the property of individuals is, and all machinery, and other personal property of

railroad companies remaining in said city, and a proportionate value of their rolling stock, which shall be ascertained by taking the proportion which the length of the track in the city bears to the length of the main track of the railroad in the state, may be assessed and taxed provided the property of no railroad companies shall be taxed by said board until the expiration of any exemption accorded to such company by law of the state."

It is clear and incontrovertible that if these charter provisions are still in force and have not been repealed, the city is right in its present contention, and is entitled to collect the taxes due by appellant on the basis of the assessment made by the city assessor.

It is claimed that the act of the legislature constituting the members of the railroad commission state railroad assessors (Code 1906, § 4384), had the effect to repeal these charter provisions, and made the railroad commissioners not only state and county assessors but city assessors as well.

From this proposition we vigorously dissent. It is true that section 112 of the state constitution authorizes the legislature to "provide for a special mode of valuation and assessment of railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations or associations not situated wholly in one county." But it will be noted that this constitutional provision does nothing except to authorize and empower the legislature, if it sees fit, to provide a special mode for valuing and taxing railroads and railroad property,—no compulsion, nothing mandatory.

Under this authority, the legislature did constitute the members of the railroad commission state railroad assessors, thereby putting them, as to railroad property, in the place and stead of county assessors, but not in the place and stead of city assessors. Not one word is said in the whole act about their being municipal assessors, or about the private charters of municipalities to that extent being repealed, or about the assessors of such municipalities in that respect being supplanted. The conten-

tion, however, of counsel is that this act of the legislature had the effect to repeal that part of the charter of the city of Vicksburg. It certainly is not expressly repealed by the act, and if it is repealed at all it must be by implication, but the well settled doctrine is that repeals by implication are not favored. It is thus stated by an eminent law writer: "Repeals by implication are not favored. A statute will not be construed as repealing prior acts on the same subject (in the absence of express words to that effect) unless there is an irreconciliable repugnance between them, or unless the new law is evidently intended to supersede all prior acts on the matter in hand, and to comprise in itself the sole and complete system of legislation on that subject." Black on Interpretations of Laws, p. 112 *et seq.*

Argued orally by *George Anderson,* for appellee.

MAYES, J., delivered the opinion of the court.

The question involved in this case was in effect settled by the case of *New Albany v. Railroad Co.,* 76 Miss. 111, 23 South. 546. Section 112 of the Constitution of 1890 of the state provides, among other things, that: "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads," etc. Acting under the authority granted by the above section of the Constitution, the legislature enacted a general scheme for the assessment of all railroad property within the state, and when it did so it superseded all other law on this subject.

By section 4384, Code of 1906, the members of the railroad commission are made the state railroad assessors, to assess all railroads, etc., telephones, etc. By section 4382, Code of 1906, it is expressly required that each railroad company shall file with the commission, as assessor, a complete schedule of all its property, etc.; and the list shall show what part of the property so listed is located in each county, and each city, town, or village,

and the value of same in each of the places above specified. This requirement can be for but one purpose, and that is to enable each county, and each city, town, or village, to collect its proportionate amount of taxes assessed by the state railroad assessors, as is expressly declared by section 4387, Code of 1906. By section 4389, Code of 1906, when the rolls are made up and objections are disposed of, the rolls are required to be sent to the clerks of the boards of supervisors of the respective counties, and, when so sent, each city, town, or village and county may inspect these rolls, and from them determine the amount of taxes that each should collect, predicated upon the assessment made by the state railroad assessors.

The statutes which we have referred to are complete in every detail, general in their application to all railroads, and exclusive of the right of any other authority to make any assessment of the property therein described. No city, town, or village can make any independent assessment of its own, whether its charter was obtained before or since the adoption of these sections of the Code. ·        *Reversed, demurrer sustained, and remanded.*